IN THE

# United States District Court for the Eastern District of North Carolina

Southern Division

| | |
|---|---|
| **ANDREW U. D. STRAW,**<br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br>*Defendant.* | Case#: 7:23-cv-00162-BO-BM<br><br>Hon. Terrence Boyle<br>Judge Presiding<br>Hon. Brian Meyers<br>Magistrate Judge<br><br>JURY TRIAL DEMANDED |

## MOTION FOR INJUNCTION TO PROVIDE HEALTH COVERAGE

I, *plaintiff-appellant*, Andrew U. D. Straw, hereby move the Court to ORDER the government to provide me with health care coverage where I live:

### FACTS

1. Camp LeJeune Justice Act of 2022 was passed to reverse the unfair and unjust result in MDL-2218. It also should be used to reverse unfair residence requirements in other laws which have been used to deny victims healthcare.

2. My base exposure is not disputable. I used that base *in utero* and as an infant for 19 months while my father was stationed there at MCAS New River from December 19, 1968 to July 24, 1970.

3. I was born in **Camp LeJeune Naval Hospital in 1969** and this is my place of birth listed on my North Carolina birth certificate. This date and place of birth

have been adjudicated by the Federal Circuit and CAVC. This information also appears in the record of MDL-2218.

4. I have severe mental illness and other injuries that are attributable to the toxic water exposure to me while I was a fetus and infant, son of a Camp LeJeune U.S. Marine Corps veteran. I was in fact exposed for **19 months**.

5. There is evidence in another federal court's record of my having bipolar disorder, schizophrenia, depression, anxiety, "autistic thinking," and migraines. These documents are incorporated by reference. *Straw v. LinkedIn*, 5:22-cv-7718-EJD (N.D. Cal.) (**Dkts. 22-25, 22-29, 22-30, 22-31**). In that same case, my SSDI benefit letter evidence appears, **Dkt. 22-32**, and my extremely low income levels for decades in my SSA Income Statement, **Dkt. 22-33**. All these documents are incorporated here by reference.

6. My bipolar disorder is associated with early life exposure to PCE, one of the chemicals in the water at Camp LeJeune.

7. It is not contestable that the water at Camp LeJeune was contaminated with PCE, an industrial solvent:

> "Between 1957 and 1987 the groundwater at Camp Lejeune was contaminated with industrial chemicals, primarily chlorinated solvents such as trichloroethylene (TCE) and **perchloroethylene (PCE, also called tetrachloroethylene)**."
>
> Committee on the Review of Clinical Guidance for the Care of Health Conditions Identified by the Camp Lejeune Legislation; Board on the Health of Select Populations; Institute of Medicine. Review of VA Clinical Guidance for the Health Conditions Identified by the Camp Lejeune Legislation. Washington (DC): National Academies Press (US); 2015 Mar 26. 1, Introduction. Available from:

2

https://www.ncbi.nlm.nih.gov/books/NBK284975/

8. PCE has been demonstrated in medical literature to be associated with bipolar disorder, and is described as a neurotoxin that has long-term effects on those exposed to it in drinking water as young children, like me:

> The study found evidence that **early-life exposure to PCE-contaminated drinking water has long-term neurotoxic effects**. The **strongest associations were seen with** illicit drug use, **bipolar disorder**, and post-traumatic stress disorder. Key strengths of the study were availability of historical data on affected water systems, a relatively high exposure prevalence and wide range of exposure levels, and little confounding.
>
> https://annalsofglobalhealth.org/articles/abstract/10.1016/j.aogh.2016.01.013
>
> Citation: Aschengrau, A., Janulewicz, P.A., White, R.F., Vieira, V.M., Gallagher, L.G., Getz, K.D., Webster, T.F. and Ozonoff, D.M., 2016. "Long-term Neurotoxic Effects of Early-life Exposure to Tetrachloroethylene-contaminated Drinking Water." Annals of Global Health, 82(1), pp.169–179. DOI: http://doi.org/10.1016/j.aogh.2016.01.013

9. Bipolar disorder is associated with a 66% higher likelihood of car accidents and greater injuries when an accident happens:

    Chen VC, Yang YH, Lee CP, Wong J, Ponton L, Lee Y, McIntyre RS, Huang KY, Wu SI. *Risks of road injuries in patients with bipolar disorder and associations with drug treatments: A population-based matched cohort study.* J Affect Disord. 2018 Jan 15;226:124-131. doi: 10.1016/j.jad.2017.09.029. Epub 2017 Sep 23. PMID: 28972929.

10. I was in such a car accident on my way to the Indiana Supreme Court to work. Evidence of this is already in the record of *Straw v. LinkedIn*, 5:22-cv-7718-

EJD (N.D. Cal.) (**Dkts. 22-26, 22-27, & 22-28**). I incorporate that true and correct evidence by reference here.

11. I receive SSDI because of the bipolar disorder and broken bones in both my legs and my pelvis from the car accident, adjudicated 2008. My SSDI is only **$1,386 monthly** because my law career was cut short by the effects of the poisoning and how others treat me as a lawyer with serious mental illness.

12. The United States is responsible both for my mental and physical disabilities and poor health, including all discrimination I suffer therefrom.

13. I was **denied Workers Compensation** and the health coverage it would have provided. *Straw v. Indiana*, 22A-EX-679 (Ind. Ct. App. 2022)

14. I was **granted Medicare** after enrolling in 2010 because I had been receiving SSDI for 24 months as of **9/1/2010**.

15. I was **denied the Camp LeJeune Family Member Program benefit** because my parents slept off base with me even while using the base during the day during that 19 months, far more than 30 days. The VA, BVA, CAVC, and Federal Circuit used that off-base residence to deny me this health care and my 7 years of litigation for it ended with denial:

16. *Straw v. VA*, VA# 741/PMD; *Straw v. VA*, BVA Docket # 16-15 216A (12/4/2018); *Straw v. Wilkie*, 32 Vet. App. 374, 375 (2020); *Straw v. Wilkie*, 20-2090, 843 F. App'x 263 (Fed. Cir. 1/15/2021).

17. The Camp LeJeune Justice Act of 2022 does not contain any residence-based limitation on coverage or remedies, abandoning the earlier requirement for

4

the CLFMP "Janey Ensminger Act of 2012" benefit. *Cf.* 38 U.S.C. § 1787, Public Law 117-168, SEC. 804(b); 136 Stat. 1802-1804.

18. That CLJA **lack of a residence address requirement** was included so that dependents who lived off base but used that base and civilian employees who worked at the base would be covered.

19. This CLJA law is meant to reverse the MDL-2218 denial of justice that dragged out this matter of compensation from **2011-2020**.

20. Any sort of justice for a victim is contemplated so as to address **all harms** and **prevent new harms from flowering out of the old**. CLJA, SEC. 804(b).

21. When I moved to the Philippines in 2018 and became an asylum seeker due to the disability discrimination I have suffered from this Camp LeJeune bipolar, **my Medicare (Parts A, B, and D) ceased to cover me**. *Straw v. CMS & SSA*, 1:20-cv-1315 (D.MD 2020). Address defeated my health coverage, ***again***.

22. http://cpa.andrewstraw.com (Philippines DOJ letter requesting others to assist me as a human rights violation victim and asylum seeker)

23. My mother died of her Camp LeJeune cancer while I was in law school. Her cancer began in her breast and spread first to her spine and then to her brain.

24. Thus, she died because **Camp LeJeune brain cancer destroyed her brain**.

25. My father, USMC Sgt. Phillip U. D. Straw (Vietnam Veteran) in 2022 has had surgical treatments for **brain and body tumors**.

26. I have had many mental illness and disability problems caused by **infant brain injuries from my Camp LeJeune exposure**.

5

27. My brother, U.S. Air Force Captain Jason Lee Straw (ret.), suffered from learning disabilities, including dyslexia, as a child. His teachers called him "retarded" when he was not. That was a big burden for my brother to bear for many years.

28. My daughter has scoliosis so severe that it required her to wear a brace from the age of 6 forwards and then she needed open spine surgery at 13 years old:

29. 

30. These are the x-rays of my daughter, Ava Straw, and her spine both before and after her December 2011 surgery.

31. Thus, my nuclear family have experienced damage to their **Central Nervous Systems** that are far more likely than not to be from Camp LeJeune toxic water poisoning. Each injury simply reinforces that Camp LeJeune was the cause because such a cluster is not plausible outside that common cause when nobody in my ancestry had such diseases. None of my 4 grandparents, for instance, had brain cancer or scoliosis or schizophrenia or bipolar.

6

32. I was there. My mother and father were there. My brother and daughter's DNA were there.

33. **I need cancer screening** on a regular basis because I am at high risk of cancer, obviously. I don't have the money on SSDI at $1,386 per month to pay for this.

34. I have no health insurance because <u>others denied me.</u>

35. I need my **Home Health Aide** to be paid at the normal Hawaii rate of $21 per hour, 160 hours per month. **$3,360 per month**.

36. I need my **medicines** covered that **treat my bipolar disorder**. This includes Lithium Carbonate 450mg twice daily; Seroquel (Quetiapine/Victus) 300mg once daily; and Propranolol 40mg one daily. **$80 per month** (cash rate)

37. I need dog food and vet care for my service dog. **$60 per month**.

38. I need my doctor visits to be covered at **$100 per month**.

39. I should be granted **$400 per month** for **cancer and other health screening** for any condition associated with Camp LeJeune poisoning.

40. Thus, in total, I should be paid **$4,000 per month** in cash for these ongoing costs that right now are being *unfairly absorbed by plaintiff and his service providers.*

41. The Court can direct the United States to pay this **$4,000** into the same bank account used for plaintiff's SSDI benefit.

42. Alternatively, **Medicare** could be ordered to pay all of these costs regardless of plaintiff's Philippines location and backwards to June 2018, when plaintiff moved to the Philippines. Thus, 57 months x $4,000 = **$228,000**.

7

43. Alternatively, **Camp LeJeune Family Member Program** can be ordered to pay these costs without regard to residence since this new law does not require any on-base residence and should include health care as part of the recovery.

44. This ORDER is like **first aid** while the main surgery awaits: full compensation.

45. This lump sum and monthly amount can be offset from my damages award.

46. Granting this payment is based on incontrovertible evidence and is justified.

WHEREFORE, I move the Court to issue an injunction directing either the government directly, Medicare, or Camp LeJeune Family Member Program to pay past and ongoing medical costs from this poisoning not covered by any insurance now.

Respectfully submitted this 3rd **Day of April, 2023.**

*Andrew U. D. Straw*
Andrew U. D. Straw, *Proceeding Pro Se*
Telephone: (847) 807-5237
Email: andrew@andrewstraw.com
712 H ST NE PMB 92403
Washington, D.C. 20002

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on **April 3, 2023**, I sent this **MOTION** and **PROPOSED ORDER** below to the Clerk of Court via U.S. Mail. CM/ECF or the Clerk/U.S. Marshal will serve the defendant upon grant of *IFP* (FRCP Rule 4(c)(3) & 28 U.S.C. § 1915(d)).

I will send a courtesy copy via email to the two U.S. DOJ attorneys who have appeared in my case on this date, **April 3, 2023**:

Elizabeth Platt, elizabeth.k.platt@usdoj.gov

Haroon Anwar, haroon.anwar@usdoj.gov

Respectfully submitted,

*/s/ Andrew U. D. Straw*

s/ ANDREW U. D. STRAW
712 H ST NE, PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237
andrew@andrewstraw.com

9