# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
### No. 7:23-cv-00162-BO-BM

ANDREW U.D. STRAW,                    )
                                      )
    Plaintiff,                    )
                                      )
    v.                            )   UNITED STATES' ANSWER
                                      )
UNITED STATES OF AMERICA,             )
                                      )
    Defendant.                    )
                                      )
_____      )

Defendant United States of America ("Defendant" or "USA" or "United States") responds as follows to Plaintiff's Complaint, Dkt. No. 1. All paragraph references are to the Complaint. All allegations not explicitly admitted are denied.

## INTRODUCTION

1.    The United States admits that on August 10, 2022, the President signed into law the Honoring our PACT Act of 2022, which incorporates Section 804 the Camp Lejeune Justice Act ("CLJA"). The United States admits that Plaintiff filed this personal injury action pursuant to the CLJA and that CLJA subsection 804(b) states:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the

1

> Eastern District of North Carolina to obtain appropriate relief for
> harm that was caused by exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the

characterizations and remaining allegations in Paragraph 1.

    2.    The United States admits that Marine Corps Base Camp Lejeune was established

in 1941 and has been used as a training facility for the United States Marine Corps. The United

States admits that between August 1, 1953 and December 31, 1987, it owned, controlled and/or

operated the military base. The United States denies the remaining allegations in Paragraph 2.

    3.    The United States admits that Marine Corps Base Camp Lejeune has on base

wells and water treatment facilities for military operations, businesses, and residents. The United

States admits that water distribution systems included Tarawa Terrace, Holcomb Boulevard, and

Hadnot Point. The United States admits that prior to 1972, the Hadnot Point system served areas

subsequently served by the Holcomb Boulevard. The United States admits that water samples

collected from Tarawa Terrace and Hadnot Point in the 1980s showed detections of TCE, PCE,

and other contaminants. The United States denies the remaining allegations in Paragraph 3.

    4.    The United States admits that before December 31, 1987, chemicals from sources

on or around Camp Lejeune had seeped into the groundwater below Camp Lejeune. The United

States admits that the chemicals detected in the analysis of water samples collected from the

Hadnot Point treatment plant have been attributed to sources including leaking underground

storage tanks, industrial area spills, and waste disposal sites. The United States admits that ABC

One-Hour Cleaners, a dry-cleaning facility located off base in Jacksonville, North Carolina,

improperly released chemicals into the soil and groundwater in Tarawa Terrace. The United

States is without knowledge sufficient to admit or deny when chemicals began to seep into the

soil and groundwater of Camp Lejeune. The United States denies the remaining allegations in Paragraph 4.

5. The United States admits that before December 31, 1987, chemicals from sources on or around Camp Lejeune had seeped into the groundwater below Camp Lejeune. The United States also admits that between August 1, 1953, and December 31, 1987, men and women working or residing on base drank, cooked with, bathed in, and otherwise came into contact with water sourced from the groundwater below Camp Lejeune. The United States is without knowledge sufficient to admit or deny when chemicals began to seep into the soil and groundwater of Camp Lejeune. The United States denies the remaining allegations in Paragraph 5.

6. The United States admits that the Agency for Toxic Substances Disease Registry ("ATSDR"), an agency of the U.S. Department of Health and Human Services, has estimated that as many as one million military and civilian staff and their families might have been exposed to contaminated water at Camp Lejeune. The United States denies the remaining allegations in Paragraph 6.

7. The United States denies the allegations in Paragraph 7.

8. The United States is without knowledge sufficient to admit or deny the number of people who may have been injured as a result of contact with this water or the injuries they may have suffered. The United States denies the remaining allegations in Paragraph 8.

9. The United States admits that between August 1, 1953 and December 31, 1987, it owned, controlled and/or operated Marine Corps Base Camp Lejeune, which is located just outside of Jacksonville, North Carolina. The United States denies the remaining allegations in Paragraph 9.

3

10.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 10.

11.     The United States admits that CLJA subsection 804(b) states:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 11.

12.     The United States admits that CLJA subsection 804(b) states:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 12.

13.     The United States admits that CLJA subsection 804(c)(2) states:

> (2) STANDARDS.—To meet the burden of proof described in paragraph (1), a party shall produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—

4

(A) sufficient to conclude that a causal relationship exists; or

(B) sufficient to conclude that a causal relationship is at least as likely as not.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 13.

14.     The United States admits that venue lies exclusively in the United States District Court for the Eastern District of North Carolina under the PACT Act § 804(d). The United States is without knowledge sufficient to admit or deny whether the amount in controversy exceeds $75,000, exclusive of interest and costs. The United States denies that PACT Act § 804(d) or 28 U.S.C. § 1331 creates subject matter jurisdiction. The United States denies the remaining allegations in Paragraph 14.

15.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 15.

16.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 16.

17.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 17.

18.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 18.

19.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 19.

20.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 20.

21.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 21.

22.     The United States asserts that the referenced legal decision speaks for itself and denies the characterizations and remaining allegations in Paragraph 22.

23.     The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 23.

24.     The United States asserts that the referenced statute and regulation speak for themselves and denies any characterizations and remaining allegations in Paragraph 24.

25.     The United States asserts that the referenced statute speaks for itself and denies any characterizations and remaining allegations in Paragraph 25.

26.     The United States admits that CLJA subsection 804(b) states:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 26.

27.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 27.

28.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 28.

29.     The United States admits that lawsuits regarding water at Camp Lejeune were previously filed against the United States under the Federal Tort Claims Act in federal court, and that some of those lawsuits were dismissed pursuant to a North Carolina statute of repose.  The United States admits that on August 10, 2022, the President signed into law the Honoring our PACT Act of 2022, which incorporates Section 804 the Camp Lejeune Justice Act.  The United States admits that CLJA subsection 804(j)(3) states:

> (3) INAPPLICABILITY OF OTHER LIMITATIONS.—Any applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under this section.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 29.

30.     The United States admits that lawsuits regarding water at Camp Lejeune were previously filed against the United States under the Federal Tort Claims Act in federal court, and that some of those lawsuits were dismissed pursuant to a North Carolina statute of repose.  The United States denies the remaining allegations in Paragraph 30.

31.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 31.

32.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 32.

33.     The United States admits that CLJA subsection 804(e)(2) states:

> (2) HEALTH AND DISABILITY BENEFITS RELATING TO WATER EXPOSURE.—Any award made to an individual, or legal representative of an individual, under this section shall be offset by the amount of any disability award, payment, or benefit provided to the individual, or legal representative—
>
>> (A) under—
>>> (i) any program under the laws administered by the Secretary of Veterans Affairs;

7

> (ii) the Medicare program under title XVIII of the
> Social Security Act (42 U.S.C. 1395 et seq.); or
>
> (iii) the Medicaid program under title XIX of the
> Social Security Act (42 U.S.C. 1396 et seq.); and
>
> (B) in connection with health care or a disability
> relating to exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 33.

34.     The United States admits that Plaintiff has presented administrative claims to the Department of the Navy.  The United States admits that Plaintiff filed an administrative claim on August 17, 2022, seeking compensation for alleged personal injuries and filed a second administrative claim on November 3, 2022, seeking compensation for alleged property damage and pain and suffering for the suspension of his law licenses.  The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 34.

35.     The United States admits that § 1346(b) permits certain claims for money damages for personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment, including members of the United States military service components.  The United States denies the remaining allegations in Paragraph 35.

36.     The United States admits that 28 U.S.C. § 1346(b) provides a limited waiver of sovereign immunity and grant of subject matter jurisdiction for the PACT Act remedy.  The United States denies that the PACT Act §§ 804(b) and (f) itself waived sovereign immunity from suit.  The United States admits that section 804(f) of the PACT Act states:

> (f) IMMUNITY LIMITATION.—The United States may not
> assert any claim to immunity in an action under this section that

8

would otherwise be available under section 2680(a) of title 28, United States Code.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 36.

37.     Admit.

38.     The United States admits that Camp Lejeune began operations in approximately late 1941.  The United States further admits that ATSDR reported in 2017 that "the military base has been densely populated throughout its history, with approximately 43,000 active duty military personnel and 51,000 dependents as current occupants."  The United States denies the remaining allegations in Paragraph 38.

39.     The United States admits that construction of Marine Corps Base Camp Lejeune began at the Hadnot Point area.  The United States admits that Marine Corps Base Camp Lejeune has on base wells and water treatment facilities for military operations, businesses, and residents. The United States admits that the water distribution systems included Hadnot Point and that water distribution began at Hadnot Point in 1942.  The United States denies the remaining allegations in Paragraph 39.

40.     The United States admits that Marine Corps Base Camp Lejeune has on base wells and water treatment facilities for military operations, businesses, and residents. The United States admits that water distribution systems included Tarawa Terrace and that water distribution began at Tarawa Terrace in 1952.  The United States denies the remaining allegations in Paragraph 40.

41.     The United States admits that Marine Corps Base Camp Lejeune has on base wells and water treatment facilities for military operations, businesses, and residents.  The United States admits that water distribution systems included Tarawa Terrace, Holcomb Boulevard, and

9

Hadnot Point.  The United States admits that water distribution began at Tarawa Terrace in 1952, at Holcomb Boulevard in June 1972, and at Hadnot Point in 1942.  The United States admits that prior to 1972, the Hadnot Point system served areas subsequently served by the Holcomb Boulevard system.  The United States denies the remaining allegations in Paragraph 41.

42.     The United States admits that the Marine Corps Base Camp Lejeune area included disposal areas, a fuel farm, and an extensive infrastructure to treat and provide water throughout the base.  The United States admits that the chemicals detected in the analysis of water samples collected from the Hadnot Point treatment plant have been attributed to sources including leaking underground storage tanks, industrial area spills, and waste disposal sites.  The United States admits that chemicals detected in the analysis of water samples collected from the Tarawa Terrace treatment plant have been attributed to improperly released chemicals at the ABC One-Hour Cleaners, a dry-cleaning facility located off base in Jacksonville, North Carolina.  The United States admits that in or about April 1981, multiple water samples collected from Camp Lejeune were tested for TCE, PCE, and other contaminants, and that TCE or PCE were each reported as detected in at least one sample.  The United States is without knowledge sufficient to admit or deny when chemicals began to seep into the soil and groundwater of Camp Lejeune. The United States denies the remaining allegations in Paragraph 42.

43.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems.  The United States denies the remaining allegations in Paragraph 43.

44.     The United States admits that in or about April 1981, multiple water samples collected from Camp Lejeune were tested for TCE, PCE, and other contaminants, and that TCE or PCE were each reported as detected in at least one sample.  The United States denies the remaining allegations in Paragraph 44.

45.     The United States admits that in 1979, the United States Environmental Protection Agency ("EPA") promulgated National Interim Primary Drinking Water Regulations under the authority of Safe Drinking Water Act, as amended ("SDWA"), 42 U.S.C. 300f *et seq.*  The United States admits that on or around November 26, 1979, EPA estimated a "suggested no adverse response level" ("SNARL") for chronic exposure to TCE of 75 µg/l.  The United States admits that TCE is used as a dry cleaning solvent and degreasing solvent for metal equipment. The United States denies the remaining allegations in Paragraph 45.

46.     The United States admits that on or around February 6, 1980, EPA published a SNARL for longer-term exposure to PCE of 20 µg/l.  The United States admits that PCE is a solvent used in dry cleaning operations.  The United States denies the remaining allegations in Paragraph 46.

47.     The United States admits that samples from the Camp Lejeune water supply system were analyzed for trihalomethanes in 1981 and 1982 and unidentified chlorinated hydrocarbons were interfering with some analyses.  The United States denies the remaining allegations in Paragraph 47.

48.     The United States admits that in May 1982 a laboratory identified TCE and PCE as interfering with analyses for trihalomethanes in samples taken from the Tarawa Terrace and Hadnot Point water systems.  The United States denies the remaining allegations in Paragraph 48.

49.     The United States admits that, in or about March 1982, Water and Air Research was contracted to assist with an Initial Assessment Study ("IAS") of water at Camp Lejeune. The United States also admits that the final IAS identified 22 of 76 sites warranting further assessment due to potential for adverse impact.  The United States denies the remaining allegations in Paragraph 49.

50.     The United States admits that further testing was conducted and that ten wells were closed between November 1984 and February 1985.  The United States denies the remaining allegations in Paragraph 50.

51.     Admit.

52.     The United States admits that in or about March 1982, Water and Air Research was contracted to assist with an IAS of water at Camp Lejeune.  The United States also admits that the final IAS identified 22 of 76 sites warranting further assessment due to potential for adverse impact.  The United States denies the remaining allegations in Paragraph 52.

53.     Admit.

54.     Admit.

55.     The United States admits that ATSDR's 1997 public health assessment (PHA) of the drinking water at U.S. Marine Corps Base Camp Lejeune in North Carolina found that people had been exposed to contaminants of concern.  The United States denies the remaining allegations in Paragraph 55.

56.     The United States admits that Marine Corps Base Camp Lejeune has on base wells and water treatment facilities for military operations, businesses, and residents. The United States admits that water distribution systems included Hadnot Point and that water distribution began at Hadnot Point in 1942.  The United States admits that prior to 1972, the Hadnot Point

system served areas subsequently served by the Holcomb Boulevard system. The United States denies the remaining allegations in Paragraph 56.

57. The United States admits that the Hadnot Point area included a fuel farm installed in 1941 that was comprised of one 600,000 gallon above ground tank, six underground 12,000 gallon tanks, and eight underground 15,000 gallon tanks containing diesel fuel, gasoline, and kerosene. The United States admits that Marine Corps Base Camp Lejeune has an extensive infrastructure to treat and provide water throughout the base. The United States admits that an engineering report regarding a 1979 leak at Hadnot Point Fuel Farm estimated that the fuel farm lost at least 20,000 gallons of fuel. The United States denies the remaining allegations in Paragraph 57.

58. The United States admits that in or about April 1981, multiple water samples collected from Camp Lejeune were tested for TCE, PCE, and other contaminants. The United States admits that samples taken from Hadnot Point showed the presence of TCE and PCE. The United States admits that other VOCs, including benzene, and vinyl chloride, were detected in a water sample collected from a well associated with the Hadnot Point system. The United States admits that the chemicals detected in the analysis of water samples collected from the Hadnot Point treatment plant have been attributed to sources including leaking underground storage tanks, industrial area spills, and waste disposal sites. The United States denies the remaining allegations in Paragraph 58.

59. The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level for

13

VOCs and estimated concentrations back into the 1950s for these systems. The United States denies the remaining allegations in Paragraph 59.

60. The United States admits that chemicals detected in the analysis of water samples collected from the Tarawa Terrace treatment plant have been attributed to improperly released chemicals at the ABC One-Hour Cleaners, a dry-cleaning facility located off base in Jacksonville, North Carolina. The United States denies the remaining allegations in Paragraph 60.

61. The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States denies the remaining allegations in Paragraph 61.

62. Admit.

63. Admit.

64. Admit.

65. The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States admits ATSDR estimated that in the Hadnot Point system, the median monthly average concentrations from 1975 to January 1985 of TCE, PCE vinyl chloride and benzene was 366 ppb, 15 ppb, 22 ppb and 5 ppb, respectively. The United States denies the remaining allegations in Paragraph 65.

14

66.     The United States admits that ATSDR assumed based on a published article that a marine in training at Camp Lejeune consumes an estimated 6 liters of water per day for three days per week and 3 liters per day the rest of the week.  The United States denies the remaining allegations in Paragraph 66.

67.     The United States admits that ATSDR assumed based on an article that under warm weather conditions, a marine may consume between 1 and 2 quarts of water per hour and shower twice a day.  The United States admits that TCE and PCE levels were measured and estimated at times before there was any enforceable EPA maximum contaminant level.   The United States is without knowledge sufficient to admit or deny whether water supplied in the field came from the Hadnot Point water system.  The United States denies the remaining allegations in Paragraph 67.

68.     Admit.

69.     Admit.

70.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems.  The United States admits that ten wells were closed between November 1984 and February 1985.  The United States denies the remaining allegations in Paragraph 70.

71.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems.  The United States admits

that ATSDR estimated that in the Tarawa Terrace system, the median monthly estimated average concentrations of PCE, TCE and vinyl chloride from 1975 to January 1985 were 85 µg/l, 4 µg/l and 6 µg/l.  The United States denies the remaining allegations in Paragraph 71.

72.     The United States admits that ATSDR estimated the median number of months a marine or Navy personnel was stationed at the base to be 18 months.  The United States denies the remaining allegations in Paragraph 72.

73.     The United States admits that in or about April 1981, multiple water samples collected from Camp Lejeune were tested for TCE, PCE, and other contaminants.  The United States admits that samples taken from Tarawa Terrace showed the presence of PCE and that samples taken from Hadnot Point showed the presence of TCE and PCE.  The United States denies the remaining allegations in Paragraph 73.

74.     The United States admits that the ATSDR has estimated that as many as one million military and civilian staff and their families might have been exposed to contaminated water at Camp Lejeune.  The United States denies the remaining allegations in Paragraph 74.

75.     The United States admits that in or about April 1981, multiple water samples collected from Camp Lejeune were tested for TCE, PCE, and other contaminants.  The United States admits that samples taken from Tarawa Terrace showed the presence of PCE and that samples taken from Hadnot Point showed the presence of TCE and PCE.  The United States admits that samples were taken during a time period before there was any enforceable EPA maximum contaminant level.  The United States denies the remaining allegations in Paragraph 75.

76.     The United States admits that testing in 1982 indicated that the level of PCE in one water sample associated with Tarawa Terrace was 104 µg/l and that the level of TCE in one

16

water sample associated with the Hadnot Point system was 1400 µg/l. The United States denies the remaining allegations in Paragraph 76.

77.     The United States admits that an analysis of water sampled in or about January 1985 from the Berkeley Manor Elementary School area reported a TCE concentration 1,148.4 µg/l and a *trans*-1,2-DCE concentration of 406.6 µg/l. The United States also admits that an analysis of samples collected in or about February 1985 from another well reported a TCE concentration of 18,900 µg/l, a PCE concentration as high as 400 µg/l, *trans*-1,2-DCE concentrations as high as 8,070 µg/l, and vinyl chloride concentrations as high as 655 µg/l. The United States denies the remaining allegations in Paragraph 77.

78.     Admit.

79.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States admits that ten wells were closed between November 1984 and February 1985. The United States denies the remaining allegations in Paragraph 79.

80.     The United States denies the allegations in Paragraph 80.

81.     The United States denies the allegations in Paragraph 81.

82.     The United States admits that a 2012 ATSDR Report summarized the results of investigations at 64 designated RCRA study areas and emphasized the occurrence and distribution of BTEX components, such as benzene, within the groundwater of the areas served by the Hadnot Point and Holcomb Boulevard Water Treatment Plants. The United States asserts

that the referenced materials speak for themselves and denies the characterizations and remaining allegations in Paragraph 82.

83.     The United States admits that Marine Corps Base Camp Lejeune has on base wells and water treatment facilities for military operations, businesses, and residents. The United States admits that water distribution systems included Tarawa Terrace, Holcomb Boulevard, and Hadnot Point.  The United States admits that prior to 1972, the Hadnot Point system served areas subsequently served by the Holcomb Boulevard.  The United States denies the remaining allegations in Paragraph 83.

84.     The United States admits that the Holcomb Boulevard distribution system was intermittently supplied water by the Hadnot Point distribution system between 1972 and 1985. The United States also admits that prior to 1972, the Holcomb Boulevard area was supplied with water by the Hadnot Point system.  The United States denies the remaining allegations in Paragraph 84.

85.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems.  The United States admits that ATSDR estimated during the month of June 1978, when water from the Hadnot Point WTP supplemented Holcomb system water, the reconstructed TCE concentrations to be 23 µg/l at Midway Park, 51 µg/l at Berkeley Manor, and 38 µg/l at Watkins Village housing areas.  The United States denies the remaining allegations in Paragraph 85.

86.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water

18

systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States admits that ATSDR estimated during the month of April 1981, the reconstructed TCE concentration in drinking water of 39 µg/l at Berkeley Manor and 28 µg/l at Watkins Village. The United States denies the remaining allegations in Paragraph 86.

87.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States admits that ATSDR estimated during an 8-day period from January 28 through February 4, 1985, use of Hadnot Point water resulted in a reconstructed-mean monthly TCE concentration in drinking water of 66 µg/l at Paradise Point, 53 µg/l at Midway Park, 54 µg/l at Berkeley Manor, and 56 µg/l at Watkins Village housing areas. The United States denies the remaining allegations in Paragraph 87.

88.     Admit.

89.     The United States admits that ATSDR performed modeling to estimate historic concentrations of certain chemicals in the Hadnot Point and Tarawa Terrace drinking water systems for a time period before there was any enforceable EPA maximum contaminant level and estimated concentrations back into the 1950s for these systems. The United States admits that ATSDR estimated prior to 1972, the assessment of exposure and risk for Holcomb Boulevard Housing residents would be the same as that for Hadnot Point. The United States denies the remaining allegations in Paragraph 89.

19

90.     The United States admits that ATSDR released a report in March 2013 entitled "Analyses and Historical Reconstruction of Groundwater Flow, Contaminant Fate and Transport, and Distribution of Drinking Water Within the Service Areas of the Hadnot Point and Holcomb Boulevard Water Treatment Plants and Vicinities, U.S. Marine Corps Base Camp Lejeune, North Carolina." The United States asserts that the referenced material speaks for itself and denies the characterizations and remaining allegations in Paragraph 90.

91.     The United States admits that the Marine Corps Base Camp Lejeune area included disposal areas, a fuel farm, and an extensive infrastructure to treat and provide water throughout the base. The United States admits that the chemicals detected in the analysis of water samples collected from the Hadnot Point treatment plant have been attributed to sources including leaking underground storage tanks, industrial area spills, and waste disposal sites. The United States denies the remaining allegations in Paragraph 91.

92.     The United States denies the allegations of Paragraph 92.

93.     The United States asserts that the referenced materials speak for themselves and that the waste disposal techniques used at Camp Lejeune from the 1940s through the mid-1980s were accepted practices that were commonly used throughout industry. The United States further asserts that TCE, vinyl chloride, and benzene were not regulated in drinking water until 1989 and that PCE was not regulated in drinking water until 1992. The United States denies the plaintiffs characterization of referenced materials and the remaining allegations in Paragraph 93.

94.     The United States denies the allegations in Paragraph 94.

95.     Admit.

96.     The United States admits that the ATSDR released a report in January 2017 entitled "ATSDR Assessment of the Evidence for the Drinking Water Contaminants at Camp

20

Lejeune and Specific Cancers and Other Diseases." The United States admits that the purpose of this report was to assess the strength of the evidence supporting causality of adverse health effects from exposures to the drinking water contaminants at Camp Lejeune and that the report concluded there was either "[s]ufficient evidence for causation" or "[e]quipoise and above evidence for causation" for the following diseases with respect to at least one of the chemicals, TCE, PCE, benzene, or vinyl chloride: kidney cancer, non-Hodgkin's lymphoma, multiple myeloma, leukemias, liver cancer, bladder cancer, Parkinson's disease, kidney diseases, systemic sclerosis/scleroderma, and cardiac defects. The United States asserts that the referenced material speaks for itself and denies the characterizations and remaining allegations in Paragraph 96.

97. The United States asserts that the referenced regulation speaks for itself and denies the characterizations and remaining allegations in Paragraph 97.

98. The United States denies the allegations in Paragraph 98.

99. The United States denies the allegations in Paragraph 99.

100. The United States denies the allegations in Paragraph 100.

101. The United States denies the allegations in Paragraph 101.

102. The United States denies the allegations in Paragraph 102.

103. The United States admits that on August 10, 2022, the President signed into law the Honoring our PACT Act of 2022, which incorporates Section 804 the Camp Lejeune Justice Act. The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 103.

104. The United States admits that CLJA subsection 804(b) states:

> (b) IN GENERAL.—An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was

otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 104.

105.   Admit.

106.   The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 106.

107.   The United States admits that the CLJA may permit appropriate relief for harm caused by a latent disease.  The United States denies the remaining allegations in Paragraph 107.

108.   The United States admits that CLJA subsection 804(c)(2) states:

(2) STANDARDS.—To meet the burden of proof described in paragraph (1), a party shall produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—

(A) sufficient to conclude that a causal relationship exists; or

(B) sufficient to conclude that a causal relationship is at least as likely as not.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 108.

109.   The United States admits that CLJA subsection 804(c)(2) states:

(2) STANDARDS.—To meet the burden of proof described in paragraph (1), a party shall produce evidence showing that the relationship between exposure to the water at Camp Lejeune and the harm is—

(A) sufficient to conclude that a causal relationship exists; or

22

> (B) sufficient to conclude that a causal relationship is at least as likely as not.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 109.

110.    The United States admits that CLJA subsection 804(j) states:

> (1) APPLICABILITY.—This section shall apply only to a claim accruing before the date of enactment of this Act.
>
> (2) STATUTE OF LIMITATIONS.—A claim in an action under this section may not be commenced after the later of—
>
>> (A) the date that is two years after the date of enactment of this Act; or
>>
>> (B) the date that is 180 days after the date on which the claim is denied under section 2675 of title 28, United States Code.

The United States also admits that CLJA subsection 804(j) states:

> (3) INAPPLICABILITY OF OTHER LIMITATIONS.—Any applicable statute of repose or statute of limitations, other than under paragraph (2), shall not apply to a claim under this section.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 110.

111.    The United States incorporates by reference its responses to the allegations in the corresponding preceding paragraphs.

112.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 112.

113.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 113.

114.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 114.

23

115.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 115.

116.    The United States asserts that the referenced website speaks for itself and denies any characterizations and allegations in Paragraph 116.

117.    The United States asserts that the referenced website speaks for itself and denies any characterizations and allegations in Paragraph 117.

118.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 118.

119.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 119.

120.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 120.

121.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 121.

122.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 122.

123.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 123.

124.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 124.

125.    The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 125.

126.     The United States admits that Plaintiff has presented administrative claims to the Department of the Navy.  The United States admits that Plaintiff filed an administrative claim on August 17, 2022, seeking compensation for alleged personal injuries and filed a second administrative claim on November 3, 2022, seeking compensation for alleged property damage and pain and suffering for the suspension of his law licenses.  The United States asserts that the referenced administrative claims speak for themselves and denies any remaining characterizations and allegations in Paragraph 126.

127.     Admit.

128.     The United States admits that Plaintiff has presented administrative claims to the Department of the Navy.  The United States admits that Plaintiff filed an administrative claim on August 17, 2022, seeking compensation for alleged personal injuries and filed a second administrative claim on November 3, 2022, seeking compensation for alleged property damage and pain and suffering for the suspension of his law licenses.  The United States asserts that the referenced administrative claims speak for themselves and denies any remaining characterizations and allegations in Paragraph 128.

129.      The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 129.

130.     The United States is without knowledge sufficient to admit or deny that Plaintiff is entitled to relief under the CLJA.

131.     The United States is without knowledge sufficient to admit or deny that Plaintiff is entitled to any relief sought under the CLJA.

132.     The United States denies that injunctive relief is available under the CLJA.  The United States denies the remaining allegations in Paragraph 132.

133.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 133.

134.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 134.

135.     The United States asserts that the referenced standing order speaks for itself and denies any remaining characterizations and allegations in Paragraph 135.

136.     The United States admits that CLJA subsection 804(e)(2) states:

> (2) HEALTH AND DISABILITY BENEFITS RELATING TO WATER EXPOSURE.—Any award made to an individual, or legal representative of an individual, under this section shall be offset by the amount of any disability award, payment, or benefit provided to the individual, or legal representative—
>
> > (A) under—
> > > (i) any program under the laws administered by the Secretary of Veterans Affairs;
> > >
> > > (ii) the Medicare program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.); or
> > >
> > > (iii) the Medicaid program under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.); and
> >
> > (B) in connection with health care or a disability relating to exposure to the water at Camp Lejeune.

The United States asserts that the referenced statute speaks for itself and denies the characterizations and remaining allegations in Paragraph 136.

137.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 137.

138.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 138.

139.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 139.

140.     The United States is without knowledge sufficient to admit or deny the allegations in Paragraph 140.

## AFFIRMATIVE DEFENSES

For its affirmative defenses, the United States asserts:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted against the United States.

### SECOND AFFIRMATIVE DEFENSE

No act or omission by the United States was the proximate cause of any injury, loss, or damage to Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

The injuries, loss, or damage alleged in Plaintiff's Complaint were proximately caused by the intervening or superseding act or acts of a party or parties, other than an officer, agent, servant, or employee of United States.

### FOURTH AFFIRMATIVE DEFENSE

The United States' liability, if any, is limited to the same manner and to the same extent as a private individual under like circumstances.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's recovery, if any, is limited to compensatory damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's recovery, if any, is limited to the amount stated in the administrative claim, and any relief requested over and above that amount is barred.

## SEVENTH AFFIRMATIVE DEFENSE

The United States is entitled to a setoff or credit for the amount paid and the value of services rendered to Plaintiff by any disability award, payment, or benefit provided to the individual or legal representative, including but not limited to any award, payment, or benefit provided under any program under the laws administered by the Secretary of Veterans Affairs, under the Medicare program under title XVIII of the Social Security Act, or under the Medicaid program under title XIX of the Social Security Act.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering for services or care which the United States has already paid.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent they accrued after August 10, 2022.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to relief for future injury or damages, including medical monitoring, that are not related to an injury accruing before August 10, 2022.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent that the evidence shows that Plaintiff voluntarily assumed the risks of the occasion, any recovery is barred by Plaintiff's assumption of risk.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that the evidence shows that Plaintiff's negligence contributed to the cause of any injury, loss, or damage, any recovery is barred, in whole or in part, by Plaintiff's contributory or comparative negligence.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that the evidence shows that Plaintiff failed to exercise reasonable care and diligence to avoid or lessen the consequences of any injury, loss, or damage, any recovery incident to such failure is barred by Plaintiff's failure to mitigate damages.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent any injuries, loss, or damage suffered by the Plaintiff are the direct and proximate result of negligence or other fault on the part of third parties, and not of the United States.

## FIFTEENTH AFFIRMATIVE DEFENSE

The United States is entitled to contribution or indemnity from any culpable third parties.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent the evidence shows that Plaintiff's claims arise out of the combatant activities of the Armed Forces, any recovery is barred by the combatant activities exception of the Camp Lejeune Justice Act.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The United States reserves the right to plead and prove additional defenses and affirmative defenses as they become known during discovery and litigation.

Dated: April 30, 2023

Respectfully Submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

J. PATRICK GLYNN
Director, Torts Branch

BRIDGET BAILEY LIPSCOMB
Assistant Director

ADAM BAIN
Senior Trial Counsel

ELIZABETH PLATT
Trial Attorney


*/s/ Haroon Anwar*
HAROON ANWAR
Indiana Bar No. 29135-53
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
P.O. Box 340, Ben Franklin Station
Washington, D.C. 20044
E-mail: haroon.anwar@usdoj.gov
Telephone: 202-305-3661
Fax: 202-616-4473

Attorney inquiries to DOJ regarding CLJA:
(202) 353-4426

30

Case 7:23-cv-00162-BO-BM   Document 17   Filed 04/30/23   Page 30 of 31

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2023, a copy of the foregoing document was served by operation of the court's electronic filing system and can be accessed through that system.

/s/ Haroon Anwar
HAROON ANWAR