# United States District Court for the Eastern District of North Carolina



FILED
MAY 08 2023
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

Southern Division

| | |
|---|---|
| **ANDREW U. D. STRAW**, *Plaintiff,* | ) Case#: 7:23-cv-162-BO-BM ) |
| v. | ) Hon. Terrence Boyle ) Judge Presiding ) Hon. Brian Meyers |
| **UNITED STATES OF AMERICA**, *Defendant.* | ) Magistrate Judge ) ) JURY TRIAL DEMANDED |

## REPLY REGARDING DKT. 16 RESPONSE

COMES NOW, *pro se Plaintiff* ANDREW U. D. STRAW (hereinafter "Plaintiff"), individually, hereby REPLY to the defendant's arguments in **Dkts. 16 & 16-1**:

First, let me say that I don't understand what Mr. Anwar's goal is in opposing me having health care as a person clearly present as a baby and *in utero* on top of this EPA Superfund site that caused me severe injury that has lasted my whole life. When I ask health care, it is for a semblance of normalcy after years of deprivation and decay, a tiny bit of healing and prevention and anti-poverty action until my full remedy is applied. I will win because I meet all elements of this law. Dragging it out until my body and mind decay while I am still alive is in bad faith and the DOJ needs to stop this. My children along with me can have **no healing** and **no reconciliation** and **my poverty** remains until the day my pulse finally stops. I suspect it won't be that long as long as I stay in this **DEEP POVERTY** that Mr. Anwar is insisting I keep experiencing without health care coverage and payments.

## FACTS & LAW: SUMMARY JUDGMENT

1. **Dkt. 16** attacks my motion for summary judgment and my injunction motion to ask for health care coverage, since I have none in the Philippines and need it due to the Camp LeJeune infant and *in utero* exposure putting me at **high risk of cancer** and demonstrated Camp LeJeune **bipolar requiring treatment**.

2. The government says that my motion for summary judgment is premature, but cites nothing in the FRCP or local rules to say that an early motion for summary judgment is not possible or useful.

3. In fact, **Dkt. 16** shows what is going to be important in my Second Motion for Summary Judgment after the Rule 36 admissions of the government are acknowledged and given impact.

4. The government, Mr. Anwar, wants discovery but I have already demanded that the government agree to dispositive admissions with my RFA. That's discovery and the government did not respond.

5. However, that set of admissions did not take effect until end of the day **May 1, 2023**, **EST**, after my motions, because I sent the RFA on **April 1, 2023**.

6. The government wants expert testimony, but this CLJA action is not taking place in a vacuum. There will literally be potentially over 100,000 CLJA lawsuits filed in this Court and to ask every plaintiff who has a ripe Navy JAG claim (**Dkt. 17, ¶ 128**) to provide **expert witness testimony**, controvertible, or **depositions**, is to use the discovery system of the Court to create **hundreds of years of delay**.

2

7. That is not the intent of the CLJA. That law was passed to overturn the result in MDL-2218, not *duplicate* its futile **9 years of delay and denial.**

8. CLJA is a strict liability law with no negligence requirement and with all of the immunity and other defenses that were used successfully in MDL-2218 stripped from the toolbox of defenses this time. *See*, CLJA, **SEC. 804(f).**

9. To say there is sovereign immunity still is to say in bad faith that this law was not passed or that was not passed to reject MDL-2218, when it was.

10. The government is always on the lookout for new ways to cause unethical delay. Now their tactic is to ensure the discovery system and "causation" are used to achieve delay against specific victims like me.

11. A number of facts about me have already been adjudicated even when I was denied the health coverage under the Janey Ensminger Act of 2012 over my sleeping address at night. **Exhibit A1**. *Straw v. Wilkie* (CAVC)

12. The Court can see the anemic resistance to my facts in the First Summary Judgment Motion. **Dkt. 16-1**. The argument is essentially to deny my motion not because the government disagrees or controverts the facts that I presented, because those facts are *not* controverted.

13. All the government wants to do is say that more discovery has to happen before a summary judgment motion is filed even when provided documentation. That's not true and the plain language of **FRCP Rule 56(b)** shows that it is not true:

3

Rule 56. Summary Judgment

(a) Motion for Summary Judgment or Partial Summary Judgment. **A party may move for summary judgment**, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is **no genuine dispute as to any material fact** and the movant is entitled to **judgment as a matter of law**. The court should state on the record the reasons for granting or denying the motion.

(b) **Time** to File a Motion. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment **at any time until 30 days after the close of all discovery**.

(c) Procedures.

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of **a genuine dispute**, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, **it cannot present facts essential to justify its opposition**, the court may:

4

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

(e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) **grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it**; or

(4) issue any other appropriate order.

(f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:

(1) grant summary judgment for a nonmovant;

(2) grant the motion on grounds not raised by a party; or

(3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

(g) Failing to Grant All the Requested Relief. If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

14. This rule only sets the outer, latest time limit for moving for summary judgment. Nothing in the rule precludes this. Nothing in the rule says the government must be allowed its answer first.
15. In fact, summary judgment motions tend to clarify both the material facts and the law, so they serve a very useful purpose early on.
16. Even here, **Dkt. 16** and **Dkt. 16-1** show that the only objections are to sufficiency of material facts but my material allegations of fact are not controverted directly or individually. There is no legal argument about the elements of a CLJA lawsuit.
17. Those elements are found in the language of the Act itself. **30 days of exposure**. **Injury** alleged to be **from the base poisons** and **that association proven at least as likely as not**. **Damages** for every bit of harm that derives from the injury.
18. Moreover, there is nothing in Rule 56 to allege that only one summary judgment motion can be made during a lawsuit. As the facts develop, the case for a summary judgment can become stronger, as with the myriad of admissions being presented by me today after the government did not respond to my RFA within 30 days with the documents I provided defense counsel.
19. If the government had admission requests for me or interrogatories, it could already have sent them. Nothing prevents that. But now that the government has by law admitted everything needed to win my case, I certainly would respond consistently with the admissions. *I wrote them based on what is true.*

6

20. In any event, the Court may or may not view the First Summary Judgment Motion as premature. *Pledger v. Lynch*, 5 F. 4th 511, 526 (4th Cir. 2021). But the second summary judgment motion is definitely *not* premature with the **admissions** and **LR 56.1 statement** and **affidavits** I am presenting today.

21. The government cannot admit the full array of facts needed to win and then try through more discovery to contradict itself.

## INJUNCTION FOR HEALTH CARE

22. The government says no declaration of law or injunction can be had because Congress did not waive those immunities. That's **wrong**. Counsel cites to a Rehab Act § 504 case, *Lane v. Pena*, 518 U.S. 187 (1996), to say that only money damages are available. Of course, in that § 504 case, only **equitable remedies** were available, **not monetary**, so that is one serious difference.

23. However, this is **not a Rehab Act case**. This is a case under a **new law** called Camp LeJeune Justice Act of 2022 passed to **reject the immunity arguments** made by the government in MDL-2218. Those included sovereign immunity.

24. There is language in the CLJA regarding immunities of the government precisely because Congress **rejected *all* the MDL-2218 immunity arguments**. It is important to recite both the remedies language and the immunities language in the Act:

> **SEC. 804(b).** In General.--An individual, including a veteran (as defined in section 101 of title 38, United States Code), or the legal representative of such an individual, who resided, worked, or was **otherwise exposed (including *in utero* exposure) for not less than 30 days** during the period beginning on August 1, 1953, and ending on December 31, 1987, to water

7

at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring **an action** in the United States District Court for the Eastern District of North Carolina **to obtain appropriate relief for harm** that was caused by exposure to the water at Camp Lejeune.

25. Counsel for defendant asserts a **sovereign immunity defense** at pages 6-7 of **Dkt. 16** that Congress explicitly denies in the Act:

    **SEC. 804(f).** Immunity Limitation.--The United States **may not assert any claim to immunity** in an action under this section that would otherwise be available under section 2680(a) of title 28, United States Code.

26. A cursory scan of MDL-2218 shows the rejected immunities that CLJA clearly meant to reverse. *In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318 (N.D. Ga. 2016). Sovereign immunity appears 13x in this case that Congress rejected in passing this new law. None of those immunities can survive **CLJA, SEC. 804(f)**.

27. Thus, dragging a Rehab Act § 504 case into this to deny me health coverage with my fully justified injunction is not justified by the Act and in fact that immunity argument is **wholly precluded by the actual language of the CLJA**.

28. CLJA is not FTCA. FTCA provisions such as 28 U.S.C. § 2674 should not be read into CLJA unless *specifically invoked* in the CLJA because CLJA is not a mere appendage of the FTCA that led to victims not being paid. CLJA stands on its own and the remedies are to right severe wrongs **made worse by delay**.

29. FTCA does not provide injunction relief. *Hall v. United States*, 44 F. 4th 218 (4th Cir. 2022). **There is no precedent under CLJA for that same limit.**

30. Unlike Congress and the president, who cared about these victims enough to overturn a *final FTCA judgment invoking sovereign immunity* with a new law, DOJ and Navy JAG have been hostile from day 1 and continue to be. In fact, DOJ seems to be on autopilot against remedies for harms Congress intends to fix. The 4th Circuit is not always receptive to this cramped view of waivers of sovereign immunity. FTCA is closer to the Clean Air Act and for good reason. *State v. United States*, 7 F. 4th 160, **168** (4th Cir. 2021).

31. Here, the language in SEC. 804(b) is "to **obtain appropriate relief for harm** that was caused by exposure to the water at Camp Lejeune." That leaves what is appropriate in the hands of the Court to fix this. That's why I make the motion.

32. Not every damage is alleviated by monetary damages long into the future when the government finally loses or settles. The harm here includes my not having health care from **2018 forward** because Medicare won't cover me overseas when I have Medicare because of the Camp LeJeune bipolar and the car accident the bipolar made 66% more likely. And Camp LeJeune Family Member Program health care was denied because I did not have a Camp LeJeune base address under that law. CLJA has no on-base address requirement, only "otherwise exposed." That leaves me with the exposure, causation, injury, and damage all clearly having happened and continuing because I still need health care for this bipolar and to prevent its harms, like suicide, *inter alia*. Not to mention a cancer that may exist that I cannot detect just sitting at home in *deep poverty*.

33. An injunction to pay me $4,000 monthly from a government that can print money is a very slight imposition on a government that hurt me so badly and the damage is ongoing right now, today, this minute. Undetected cancer, untreated, is an emergency to me, even if the DOJ could care less about me and what it did regardless of the new law, with DOJ acting like emotionless robots.

34. Any injunction to prevent my poisoning from causing me **cancer after a lifetime of bipolar** and other illnesses is precisely the kind of **"appropriate relief for harm"** that the Act anticipates. FRCP Rule 65 is justified.

35. The Act does not limit itself to legal damages but is quite broad and must be found to enable the Court to grant **any kind of relief** that is available under American common law, and that includes *both* damages and equitable relief.

36. The arguments against declarations of law are equally unavailing.

37. The "useful purpose" of the declarations is to establish the liability of the government and allow both an injunction and damages to be imposed on a **government that poisoned me**, gave me **mental illness that ruined my life**, and now wants to drag out the justice for that by ensuring that I remain in poverty, my Home Health Aide remains <u>unpaid</u>, and I have **no cancer screening** to prevent the types of **cancer that my mother and father got from this**.

38. There is nothing hypothetical about this. I have bipolar disorder and PCE exposure at a young age causes it. That's as real as it gets, with severe physical and mental pain, extremely high suicide rates, shorter lifespan, *inter alia*.

10

39. My teeth are rotting out of my head because of the lithium I take religiously to prevent bipolar symptoms like suicidal thoughts and to avoid expensive hospital stays.
40. My mother died of her Camp LeJeune breast and brain cancer while I was in law school at Indiana University. Again, as real as it gets.
41. My father has torso and brain tumors that the VA removed in the past couple of years. That's as real as it gets.
42. I am at **HIGH RISK of cancer**. There is nothing speculative about that. My parents have had cancers associated with Camp Lejeune and **none of my grandparents** had **breast or brain cancers**, period.
43. Further, these declarations about discrimination, which I supported with facts, are **not unrelated**. I experienced discrimination based on this same bipolar disorder that Camp LeJeune toxic water caused. It is my second claim.
44. You don't have to look far to find a Supreme Court case confirming that state courts have discriminated based on disability since the Founding. *Tennessee v. Lane*, 541 U.S. 509, 511, 525, 531 (2004)
45. The government appears not to understand the language of the Act. **"Appropriate relief for harm"** is as broad as you can get. There is no room for parsing this in a limited way so only a tiny fraction of the damage can be addressed, and that only after long delays that the government demands even after this started in 1953, the MDL made victims wait another 9 years without relief, and a new law mandates relief by removing DOJ's defenses.

11

46. If there is to be the unethical delay that the government appears to yearn for *again* with discovery and experts that will add literally years to this for all victims, then I must be protected in the meanwhile. This is not negotiable.

47. The injunction here for a government with *unlimited resources* to provide $4,000 per month to protect my health as requested is **limited, modest, and appropriate**. It is a type of relief anticipated in the FRCP at **Rule 65**.

48. $4,000 plus $1,386 SSDI is $5,386. $64,632 per year for my household of 6.

49. The poverty line for a household of 6 is $40,280. That means even with this health benefit, my household will still only be at **60% above the poverty line**.

50. This is **humane and reasonable** given what the government did to me 54 years ago and Mr. Anwar's insistence today on denying me shows the government has not learned anything since my parents and I were poisoned.

51. The Court must teach the government how to act toward victims. Now is the time for that instruction. This needs to stop being an adversary process. CLJA was meant to stop that and **the government needs to stop fighting with victims.**

52. My injunction motion requests that the medical damage done to me be halted. That's not extraordinary or drastic. It is **directed at the harm** that is ongoing from my poisoning and is meant to **prevent more harm** from this poisoning.

53. My getting cancer after **both my parents had it** after their Camp LeJeune exposure is a very real possibility given the facts and I must not be required to bumble along in the dark in poverty letting that potential Camp LeJeune

cancer advance to **a stage that is not treatable**. That is very real **immediate and irreparable injury, loss, and damage**. Rule 65(b)(1)(A)

54. I have proven my presence on that base and it is already adjudicated. *Straw v. Wilkie*, 18-7129 (CAVC 6/26/2020). My affidavits and RFA have been unanswered. My SSDI was granted because of the bipolar and the car accident made 66% more likely by the Camp LeJeune bipolar.

55. Now, the government has made admissions that I was there for over 570 days. **583 days my father was stationed there**, and the government **admits** that I had full access to the base like any other family member of someone who was stationed there.

56. Being denied the "Janey Ensminger Act of 2012" health coverage over my sleeping address at night with 19 months of base access is strong reason to provide me with protection now because there is **no residence requirement in CLJA**.

57. Congress fixed its 2012 error and now includes those who were **"otherwise exposed"** and includes *in utero* individuals and infants. **That's me.** There is no denying it. The government admits it.

58. I was *born there* in 1969. This requires an *extraordinary sensitivity* to the damage caused to me. http://organs.andrewstraw.com should be noticed.

59. The government wanted to split hairs over residence and has demonstrated that it will deny my health care over *nothing*. Over Congress' oversight in the earlier law that allowed *poisoned babies* born there who had access to the base

13

for 19 months **not to get health coverage** for conditions like **bipolar** that are **associated with and caused by the toxic Camp LeJeune base water solvents such as PCE**.

60. **PCE causes bipolar disorder.** Medical literature is unanimous on this. I have never found any study denying that bipolar is caused by **early exposure to PCE**, only studies that found it to be associated. And associated is as good as it gets, given there is no such thing as absolute philosophical metaphysical proof of causation in this quantum universe in which we reside. Scientists can't even tell you exactly where a photon is, only where it is likely to be.

61. I have only found **evidence supporting this bipolar connection**. That makes the matter not "at least as likely as not" but "more likely than not."

62. And in fact, given I was born there and used that base for over 19x the required time, 1968-1970, and I got this PCE-caused bipolar condition and others, **I AM EVIDENCE** of the connection. *I* show clear and convincing connections between exposure and my illnesses, which are a long list.

63. Others can look to *me and my illnesses* and see what is connected.

64. It's not that I need some doctor to assert the connection. I *show* the connection.

65. The government needs to acknowledge this and stop acting so unreasonably, so adversary and litigious when it knows better than to treat me like that.

66. I do not believe President Biden signed this law so that people **born there** and with conditions **shown to be caused by the Camp LeJeune toxins** can be treated the way I am being treated by Mr. Haroon Anwar.

14

67. I want health coverage to limit the damage. Please give it to me.

68. The government lists 4 elements and I meet all 4. **Dkt. 16, page 8**:

69. "A plaintiff seeking a preliminary injunction must demonstrate 'that he is **likely to succeed on the merits**, that he is **likely to suffer irreparable harm** in the absence of preliminary relief, that the **balance of equities tips in his favor**, and that **an injunction is in the public interest**.'" *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "Each of these four requirements must be satisfied." *Taliaferro v. N. Carolina State Bd. of Elections*, 489 F. Supp. 3d 433, 437 (E.D.N.C. 2020) (quoting *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019))

## INJUNCTION ELEMENT #1

70. The very possibility that I could have cancer developing and getting worse to a stage beyond treatment without any screening available now is **likely irreparable harm that a preliminary injunction can address** with a limited payment each month of $4,000, as I requested for my health costs. The stress of not having health care also aggravates my bipolar, making it harder to manage suicidal thoughts and get the sound sleep I need.

## INJUNCTION ELEMENT #2

71. Given the admissions and the incontrovertible facts about me and my exposure at Camp LeJeune as an infant and *in utero*, **I am definitely likely to succeed**

15

**on the merits**. I am not someone who was never there or not injured. I fall into the TOP TIER of people exposed to that base. http://organs.andrewstraw.com My parents got the cancers and I have lived with severe illnesses that any reasonable person would admit were likely from that Camp LeJeune exposure. People like me are why CLJA was passed. I lobbied every member of the House and Senate for this in 2022 because I was unreasonably denied in the MDL.

### INJUNCTION ELEMENT #3

72. I was a baby who started being exposed to that toxic nightmare at Camp LeJeune *in utero* and for 19 months after I was BORN AT THE BASE HOSPITAL that was heavily contaminated in its water supply by PCE, which causes bipolar disorder. I suffered pain from this my whole life.
73. I was exposed at the most vulnerable moments of a person's life and the **equities tip in my favor**.
74. To even *hint* that the equities are against me is to be contemptuous of both the proven victim, proven illnesses and damage, and the new law that covers me.
75. Nothing is in the government's favor now that CLJA was passed. The government is living in the past, trying to assert immunities that Congress removed in CLJA. I am going to win on the merits. Nobody should have exposed me to those toxins at that early point in my life. It's like the government was trying to **abort me against the wishes of my parents**.
76. Nobody should even dare to question that **my illnesses were caused by the base toxins**. In fact, the government now admits it all. All equities are in my favor.

16

## INJUNCTION ELEMENT #4

77. The government can afford the $4,000 per month to treat me for the bipolar that it caused. It can afford the part to grant me cancer screening, doctor visits, medicine, a home health aide, and my service dog going to the vet and having food to eat.

78. It is in the public interest to provide health coverage when the victim does not have it, and every single victim should be offered the same when they file a lawsuit here and have no health insurance.

79. It is not that I did not ask. I was DENIED Camp LeJeune Family Member Program and Medicare both, based on *address*.

80. My request is 100% justice for a person who is just waiting for this new law to blossom into damages. I will have my damages, there is no question about it.

81. The government made everyone wait up to 70 years now, starting in **1953**. I have been waiting since **1968**, when I first started being exposed *in utero* to that Camp LeJeune toxic water nightmare. That's **55 years this December 19**.

82. The government engaged the full effect of delay and achieved an unjust result in MDL-2218. That took 9 years to achieve nothing, not one penny of justice for any victim, and I was one of the victims in MDL-2218.

83. If the government wants to do discovery and cause this matter to drag on even *after* its admissions because it did not answer my RFA, it must pay my health coverage demand not only to protect me, but to protect against the government inflicting poverty on me and then taking advantage of it in settlement talks.

17

84. But in the meanwhile, the government that poisoned me where I was born must pay all of my medical costs now. I have explained that this should be **$4,000 per month**.

85. I am not unreasonable. I am demanding **$51,000,000** and so these medical costs can be offset by my damages later. And if the SSDI I have received is found to be artificially low because of discrimination based on the bipolar, it is justice for the government to have its $4,000 health care payments **offset by my losses**.

WHEREFORE, I REPLY that the government has not responded in good faith and with arguments that under FRCP Rule 11 should be punished because they do not represent justice, but unreasonable delay backed by the violence of poverty caused by this poisoning directly and indirectly. There is enough evidence to grant both the summary judgment motion and the injunction, but if the earlier summary judgment motion cannot be granted due to lack of evidence, the new Rule 36 admissions from failure to respond to my RFA provide plenty to grant the second summary judgment motion. The injunction is justified by the facts and the law that have been presented and if the government wants to engage in tactics that represent even more delay after all the delay that has occurred up to now, that government needs to alleviate my suffering in the meanwhile with **$4,000 per month**, starting immediately.

We live in an age when AI can scour the Internet and identify fraud in just moments. That AI can program a new application website for a benefit in minutes. The government has had 9 months to develop a website to let victims enter their claims and their evidence, but the government has not done it and that makes these

18

discovery demands now in *bad faith*. All they have to do is accept sworn affidavits from victims at face value and pay what is demanded unless it is completely unreasonable, like asking trillions for one claim. It's time to start saying yes and dismantling the adversarial attitude at the root. This is not a litigation. This is a government benefit for poisoning victims that needs to be paid and it will not be paid as long as this delay continues. I am a lawyer. I made my claims under oath on penalty of perjury. So the government can pay me now.

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury. Signed: **May 3, 2023**.

Respectfully,

*Andrew U. D. Straw*

s/ ANDREW U. D. STRAW

712 H ST NE, PMB 92403
Washington, D.C. 20002

Telephone: (847) 807-5237
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on **May 3, 2023**, I sent this **REPLY** to **Dkts. 16 & 16-1** via U.S. Mail to the Clerk of Court. I also served it via email to: elizabeth.k.platt@usdoj.gov and haroon.anwar@usdoj.gov, Elizabeth Platt and Haroon Anwar are the U.S. DOJ attorneys who made their appearances in this lawsuit on **March 24, 2023**. CM/ECF scans all paper documents and serves them once stamped, so these attorneys will be served that way also.

Respectfully submitted,

*/s/ Andrew U. D. Straw*

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
712 H ST NE, PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237
andrew@andrewstraw.com