IN THE

# United States District Court for the Eastern District of North Carolina


FILED
MAY 08 2023
PETER A. MOORE, JR., C
US DISTRICT COURT, E
BY ____ DEP CLK

Southern Division

| | |
|---|---|
| ANDREW U. D. STRAW,<br>*Plaintiff,* | Case#: 7:23-cv-162-BO-BM |
| v. | Hon. Terrence Boyle<br>Judge Presiding |
| UNITED STATES OF AMERICA,<br>*Defendant.* | Hon. Brian Meyers<br>Magistrate Judge |
| | JURY TRIAL DEMANDED |

## STATEMENT OF MATERIAL FACTS UNDER L.R. 56.1

COMES NOW, *pro se Plaintiff* ANDREW U. D. STRAW (hereinafter "Plaintiff"), individually, hereby deposes as follows as a Camp LeJeune toxic water victim in support of his **Second Motion for Summary Judgment**:

## FACTS & LAW

This statement of material facts is done in support of the Second Motion for Summary Judgment, filed herewith. The government opposed the First Motion for Summary Judgment on the grounds that there was not a separate Statement of Material Facts with numbered allegations. **Dkt. 16**. The below numbered statements address this objection and rely on the admissions the government made by not timely responding to the **Request for Admissions** that was sent to both counsel for defendant **on April 1, 2023**. Moreover, the government's causation argument is met with its admissions such that expert witness testimony would not add to this matter at this point.

1. **Admitted**: Plaintiff was born at Camp LeJeune in March 1969 and exposed to the toxic water every time he used Camp LeJeune during the 583 days his father was stationed at Camp LeJeune, in particular MCAS New River.
2. Defendant **admits**, based on the service record of U.S. Marine Corps Sgt. Phillip U. D. Straw, Plaintiff's father, that Sgt. Straw was stationed at Camp LeJeune from **December 19, 1968**, to **July 24, 1970**. This is 19 months, **19x** the amount of time required under **CLJA, Public Law 117-168, SEC. 804(b)**.
3. Defendant has **admitted** that Plaintiff was exposed that amount of time.
4. Defendant **admitted** that PCE contaminated the water at Camp LeJeune.
5. Defendant **admitted** that PCE causes bipolar disorder as a neurotoxin that especially affects people exposed as infants and *in utero*.
6. Defendant **admitted** that Andrew U. D. Straw was exposed **both** *in utero* (December 1968 – March 1969) **and** as an infant (March 1969 to July 1970).
7. Defendant **admitted** that Andrew Straw's other ailments were likely caused by the TCE, PCE, Vinyl Chloride, or Benzene that were indiscriminately contaminating the water all across the base; however, defendant admitted the main focus of damage is the mental illness, **bipolar disorder**.
8. Straw has provided a PDF on a website to show the full extent of Andrew Straw's health conditions to assist the government in understanding that **breadth and depth of damage**. The statements are true and correct on penalty of perjury and are founded on the personal experience of these health problems by Plaintiff. The URL is http://organs.andrewstraw.com

9. Given the long list of URLs with medical evidence and the fact that Plaintiff's documents lose their URL links when scanned from paper, the Court should admit that information and **take judicial notice of it**.

10. Thus, the government **admitted** plaintiff's exposure for 19x the time required under SEC. 804(b) (only 30 days of exposure is required), and right in the middle of the toxic time period. 1968-1970 is in the middle of 1953 to 1987.

11. The government **admitted** that bipolar disorder is a severe brain disease that causes 30x the normal rate of suicide, severe physical and mental pain, up to 20 years lost lifespan, and increases the risk of serious car accidents by 66%, all based on medical literature evidence Straw provided to the government.

12. The government **admits** that this 66% increase in likelihood of a car accident increased the likelihood of Straw's actual near-death car accident while driving to the Indiana Supreme Court to work.

13. Thus, there was admitted exposure for the required length of time. There was injury admitted to be caused at least as likely as not by the PCE in the water.

14. Despite what **Dkt. 16** alleges, there is no causation issue, specific or general, because **the government admitted the causation: PCE causes bipolar disorder**.

15. The government has admitted that **$51,000,000** is the right level of damages for such an **infant brain injury** claim.

16. It is worth noting that Mike Partain's claim for breast cancer asked nearly the same, $50,000,000, in his Navy claim. The Partain case is currently before this same judge.

3

17. The government has **admitted** all elements of a Camp LeJeune Justice Act of 2022 lawsuit here.
18. This is not a normal tort lawsuit. This *new law* is meant to *reject* the traditional treatment of federal tort plaintiffs.
19. This is not a rerun of the FTCA MDL-2218 case.
20. The government presented its defenses in that MDL-2218 case and won. But all that did was prompt Congress and the president to create **a new law** with much lower availability of government defenses.
21. Causation here is not the normal tort "more likely than not." It is <u>**at least as likely as not**</u>. This is a lower standard. That means something else could be equally likely to cause this injury, but **<u>CLJA still covers it</u>**.
22. This is effectively a <u>**strict liability**</u> tort law. Negligence does not need to be proven.
23. What is needed is <u>**within the explicit language of the statute**</u> and other tort law that is not strict liability must not be used to water down the CLJA and impose extraneous requirements that do not appear in this Act.
24. In my case, I was exposed for 19 months and the government **admits** this. That length of time is **element #1**.
25. In my case, I have bipolar disorder and it caused me massive injury, mental and physical, social, and professional, and will keep doing so. The government **admits** that I have this permanent brain disease because I provided documentary evidence of it from multiple physicians. That's **element #2**: injury.

4

26. The government **admits** that PCE, which was in the water at Camp LeJeune, causes this bipolar disorder brain disease, and thus that it is at least as likely as not the cause of my bipolar, since I was there. That's **element #3**: causation.
27. The government admitted in its answer at **Dkt. 17 (p. 27)** that compensatory damages are available and in its Rule 36 admissions.
28. Presence/Exposure demonstrated over 30 days: **YES (over 19x the 30 days)**
29. Injury: **YES**
30. Camp LeJeune's PCE causes that injury: **YES**
31. Government admits the $51,000,000 damages match the injury: **YES**

## Quod Erat Demonstrandum.

32. The answer was practically devoid of responses that take into account the many documents I provided to accompany my admissions requests on April 1, 2023. The government had plenty of time to evaluate my evidence but did not refer to it even once in **Dkt. 17**. There is a long list of "don't know" responses that should have been answered as admissions, especially those that rely on the government-sourced documents I provided and court cases. These include: my birth certificate, my father's USN service record, my USN Medical Records, letters referencing my bipolar from Doctor Estrada, Doctor Shoush, Nurse Practitioner Cuthbert, and Dr. Bory. Further, my mother's death certificate, which shows "breast cancer" as the cause of death.
33. The answers at **Dkt. 17** do not controvert with any evidence (none was provided) the admissions made under Rule 36 for failure to respond in 30 days.

5

## AFFIRMATIVE DEFENSES DISPENSED OR AGREED

34. Further, some affirmative defenses (**AD**s) in **Dkt. 17** are not made in good faith.

35. **AD1**: The complaint does state a claim upon which relief can be granted. This summary judgment motion actions that claim.

36. **AD2**: Defendant admits causation in the Rule 36 admissions.

37. **AD3**: Defendant claims that there were other intervening causes with not a scintilla of evidence to support that claim. That's because it is not true. In any event the defendant admits that the **Camp LeJeune PCE caused plaintiff's bipolar**, so this defense fails on its face.

38. **AD4**: The limitation to what a **private person** would have to pay is not supported by the statute. The statute at SEC. 804(b) specifically states that appropriate remedies are available and does not limit those remedies in this way.

39. **AD5**: Plaintiff agrees that **compensatory damages** are available but not punitive damages because the broader full panoply of remedies is limited by carving out and excluding *only* punitive damages. SEC. 804(g). *Expressio unius est exclusio alterius* means that **equitable relief was not carved out**.

40. **AD6**: The amount claimed in the administrative claim is the maximum amount that can be asserted as damages in the lawsuit for that claim. The relief sought is **consistent with this** and seeks exactly that amount, $51,000,000 for the infant brain injury claim.

6

Case 7:23-cv-00162-BO-BM   Document 21   Filed 05/08/23   Page 6 of 10

41. **AD7**: Plaintiff agrees that offsets are available, but if the SSDI is found to be artificially low due to discrimination by others based on the bipolar caused by Camp LeJeune, those offsets should be offset. Alternatively, if that theory is not accepted, plaintiff agrees to a full offset of the **Medicare** and **Illinois Medicaid** expenses from 2010 to 2018, the only time period in which plaintiff had any claims. Plaintiff has never received any Veterans Administration benefit, so that point is moot and the government has full knowledge of how much these claims and offsets are, but plaintiff does not.

42. **AD8**: This is the same as AD7 in the sense that offsets are available. The only other benefit is SSDI and that is not covered as an offset under the Act. The Act does not list SSDI or any other SSA benefit specifically besides Medicare and Medicaid, so plaintiff rejects the notion that SSDI must be repaid even if that insurance benefit was granted in whole or part because he was disabled and eligible for SSDI due to the PCE and its bipolar disorder effects. The limitations are called offsets and are **specifically enumerated** and mentioned in the Act as offsets and none may be added to that specific list.

43. **AD9**: All of the damages and reliefs requested have their roots in the toxic water contamination at Camp LeJeune, which happened from 1968-1970 in plaintiff's case, long before the Act was passed in 2022, so this defense is moot.

44. **AD10**: The only future medical monitoring or other costs or reliefs relate specifically to the illness and injuries sustained as a result of the 1968-1970 Camp LeJeune toxic water exposure. Any latent diseases that later emerge

7

shall also be deemed from that source, prior to passage of the Act. Thus, this defense is also moot. Cancer screening and other health costs immediately is demanded in another motion and should be granted.

45. **AD11**: The notion that I as a fetus or as an infant assumed the risk of the exposure caused by my father being ordered by the U.S. Marine Corps to serve at Camp LeJeune for 19 months from 1968 to 1970 is ludicrous. This defense is not asserted in good faith.

46. **AD12**: Defendant's attempts to add a negligence element to a strict liability relief law that has no such element listed in the statute is made in bad faith. Further, to assert that defendant as a fetus or infant could engage in negligence is again ludicrous. Plaintiff does not claim to have been at Camp LeJeune since he was 1 year old in 1970. Plaintiff's parents were not at liberty to refuse to be present because USMC Sgt. Phillip U. D. Straw, plaintiff's father, was under orders to be there and plaintiff's presence was at least in part due to ORDERS of USMC and USN medical officers of a higher rank than plaintiff's father. Finally, defendant provides not a scintilla of evidence that plaintiff engaged in any additional acts that caused bipolar to exist. There is none and this defendant speculation is in bad faith.

47. **AD13**: The mitigating damages demand is equally ludicrous, given the toxic exposure was done while plaintiff was a fetus or infant. There is not a scintilla of evidence that plaintiff failed to mitigate. The bipolar was admitted to be caused in 1968-1970, so those admissions vitiate this bad faith defense.

8

48. **AD14**: The defendant is clearly attempting to escape responsibility for the car accident that was admitted to be more likely by 66% due to the bipolar that defendant's toxic exposure is admitted to have caused. I agree that if some damage was 100% caused by someone else and not made more likely by the bipolar the toxins caused, that could be excluded. However, when the United States caused such extreme brain damage injuries to plaintiff *in utero* and as an infant, it is **jointly and severally liable** for all the damages made more likely by it, compensable damages and not punitive. This is consistent with this law being strict liability and having no negligence element in the statute.

49. **AD15**: Consistent with that, plaintiff agrees that other parties who contributed to damage that is paid jointly and severally by the United States for having played a part, the United States may seek contribution from those 3rd parties. This is not a defense against the complaint.

50. **AD16**: No combatant activities were involved with me as a fetus and infant being present aboard this North Carolina domestic military base where my father trained for 19 months *before* his Vietnam War duties. The facts show this defense is not made in good faith.

51. **AD17**: This defense is a nondefense, merely a claim to other, unnamed future defenses.

The Second Motion for Summary Judgment should be GRANTED because when the government **admits all elements** and plaintiff provides affidavit evidence showing all elements are demonstrated, no expert could provide anything additional required to

prove the case. The Court should grant relief consistent with the motion for summary judgment and the above responses to the **Dkt. 17** affirmative defenses.

Further, *affiant* sayeth not.

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury. Signed: **May 3, 2023**.

Respectfully,

*[signature: Andrew U. D. Straw]*

s/ ANDREW U. D. STRAW

712 H ST NE, PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237  andrew@andrewstraw.com

### CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on **May 3, 2023**, I filed this **STATEMENT**. I sent this affidavit via U.S. Mail with Tracking to the Clerk of Court on **May 3, 2023**.

**CM/ECF will serve the defendants when the Clerk scans this document.**

**Courtesy copies will be served via email to the following attorneys on the same date:**

Elizabeth K. Platt, elizabeth.k.platt@usdoj.gov
Haroon Anwar, haroon.anwar@usdoj.gov


Respectfully submitted,

*[signature: Andrew U. D. Straw]*

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
712 H ST NE, PMB 92403
Washington, D.C. 20002
Telephone: (847) 807-5237  andrew@andrewstraw.com

10